UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE LATTERNER,

       Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

       Defendant.
_____/

File No. 1:06-CV-226

HON. ROBERT HOLMES BELL

**O P I N I O N**

       This action challenges the denial of benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This matter is currently before the Court on the plan participant's motion to reverse the administrator's decision to terminate her long term disability benefits and on her objections to the administrative record. For the reasons that follow the Court will affirm the administrator's decision.

**I.**

       Plaintiff Jacqueline Latterner was born in 1950. In 1997 Plaintiff began working at Hi-Lex Corporation as a General Accounting Clerk. As a Hi-Lex employee Latterner was covered under a Group Long-Term Disability Plan (the "Plan"), funded by a group insurance policy issued by Defendant Hartford Life and Accident Insurance Company to Hi-Lex. (AR 52-80). The Plan is administered by Defendant.

The last day Plaintiff worked for Hi-Lex was on February 14, 2000. She took a leave of absence to undergo surgery for breast cancer. She had a total mastectomy of her left breast and a subsequent skin graft due to infection. (AR 596, 603, 607-08, 613). While she was off work she fell and aggravated problems she had experienced before the breast cancer involving her neck, left shoulder and lower back. (AR 585). After exhausting her short term disability benefits, Plaintiff applied for and was awarded long term disability benefits for the time period beginning June 15, 2000. (AR 589).

By letter dated September 24, 2003, Defendant informed Plaintiff that she no longer met the policy definition of disability. (AR 235). Plaintiff appealed the decision by letter dated December 8, 2003. (AR 230). Defendant issued its final decision denying Plaintiff's claim for long term disability benefits by letter dated March 25, 2004. (AR 156). Plaintiff filed this action pursuant to ERISA § 502, 29 U.S.C. § 1132. She alleges that Defendant violated the terms of the Plan and its fiduciary obligations when it terminated her long term disability benefits.

**II.**

Because the Court's review must be based solely on the administrative record, *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998), the Court must first determine what documents constitute the administrative record. Defendant filed an administrative record on July 6, 2006. Plaintiff filed objections because the administrative record filed by Defendant did not include the entire "claim file" Defendant provided to Plaintiff on July 13, 2004. Specifically, Plaintiff requests inclusion of Defendant's summary

detail report from July 24, 2000 through June 7, 2004, the back side of a physical therapy assessment dated March 4, 2003, three pages of an attending physician statement by Jill Winkler dated February 27, 2003, and a July 9, 2003 letter to Dr. Kilmer.  Defendant has not objected to inclusion of these items in the administrative record, and has cited to some of these records in its brief.  It appears that all of these documents were a part of Plaintiff's administrative file during the relevant time period.  Accordingly, the Court will grant Plaintiff's request to include them in the administrative record.  Records in the administrative record filed by Defendant will be referred to as ("AR ###") and records attached to Plaintiff's objections to the administrative record will be referred to as ("AR 000###").

A plan administrator's decision to deny ERISA benefits is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The Plan at issue in this case provides that Defendant has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  (AR 33). The parties agree that this Court should review the administrative record under the "arbitrary and capricious" standard because the Plan grants the administrator sufficient discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan.

The arbitrary and capricious standard is "extremely deferential" and is "the least demanding form of judicial review."  *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).  Under this standard a benefit determination is upheld if it is

3

"rational in light of the plan's provisions," *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)), or if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Although the review is deferential, it is no mere formality. *Id.* The court must still review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

Plaintiff has raised two arguments in support of her contention that the decision to terminate her long term disability benefits must be reversed. Her first argument is that the termination of benefits was arbitrary and capricious because there was no evidence in the record demonstrating any change or improvement in Plaintiff's condition after Defendant had already found that she was disabled and entitled to benefits. Plaintiff contends that the federal circuits that have considered this issue have uniformly ruled that a plan participant's long-term disability benefits may not be discontinued in the absence of a showing that the participant's condition has substantially improved.

All of the cases Plaintiff relies on in support of this first argument are inapposite because they involved termination of benefits under the same standard of disability used to grant benefits despite a lack of improvement. *See, e.g., Cook v. Liberty Life Ass. Co. of Boston*, 320 F.3d 11 (1st Cir. 2003) (reversing termination where claimant provided the same

4

type of evidence she had always provided to show disability under "any occupation" definition); *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2nd Cir. 2001) (reversing termination where there was no significant change in claimant's physical condition and claimant had been provided disability benefits for almost thirty months under the stringent "any occupation" definition of disability); *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001) ("Nothing in the claims record justified [the administrator's] decision that a change of circumstances warranted termination of the benefits it initially granted.").

In contrast to the cases cited by Plaintiff, in this case there was a change in the terms of the Plan.  Plaintiff's benefits were terminated in conjunction with a review under a new standard of disability.  The Plan defines Total Disability during the period of elimination and the next 36 months as the inability to perform the essential duties of "your occupation."  After that the Plan defines Total Disability as the inability to perform the essential duties of "any occupation " for which one is qualified by education, training, or experience.  (AR 87).  Because the standard for finding Total Disability changes after 36 months on disability and because the new standard is more difficult to meet, improvement in a claimant's condition is not a prerequisite to a determination that the claimant is no longer disabled.  A claimant's condition could stay the same, or even deteriorate, and a rational finding could nevertheless be made in some cases that the claimant, while still disabled from her own occupation, could perform the essential duties of some other occupation.  Because there was a change in the standard by which Plaintiff's disability was evaluated, Plaintiff's argument that the

5

termination of benefits was arbitrary and capricious simply because there was no improvement in her condition must be rejected.

Plaintiff's second argument is that Defendant's termination was not based on any evaluation of the comparative merits of the opposing medical opinions in the record. Plaintiff contends that Defendant "cherry-picked" evidence that was favorable to a finding of no disability, and simply discounted the unanimous opinions of Plaintiff's treating physicians that Plaintiff was totally and permanently disabled. Plaintiff also contends that Defendant failed to meet its statutory obligation to provide the specific reasons for its denial of benefits.

Defendant initially gave notice of the its termination of Plaintiff's long term disability benefits in a letter dated September 24, 2003. The letter stated that the decision was based upon the entire record, but it highlighted the change in the definition of disability and recent information from Plaintiff's attending physician, Dr. Paula Kilmer. The letter noted Dr. Kilmer's assessment that Plaintiff could repetitively use both hands, that Plaintiff could keyboard with her left hand if she did not have to extend her arm, that Plaintiff would only be able to answer the telephone with her right hand, and that Plaintiff would likely qualify for a sedentary type of work. Dr. Kilmer was concerned that Plaintiff's biggest obstacle was a psychological component, and she referred Plaintiff to a psychologist. Defendant noted that although Plaintiff met with a psychologist, she planned to see him on an as needed basis and was not under his regular care. A Vocational Rehabilitation Clinical Case Manager performed an employability analysis and found a number of occupations for which Plaintiff

6

was qualified within her physical capabilities and environmental restrictions. Defendant's letter concluded that Plaintiff was not prevented from performing the essential duties of any occupation due to a physical or psychological condition and terminated Plaintiff's long term disability benefits.

In response to Plaintiff's appeal, Defendant sent Plaintiff another letter on March 25, 2004, upholding its decision to deny Plaintiff's claim for long term disability benefits. Defendant advised that it had reviewed additional information from Dr. Kilmer, Dr. Edwards, Dr. Visser, and independent medical record reviews by doctors certified in psychiatry and physiatry. The letter summarized the new evidence and the results of the medical record reviews. The letter concluded that "[t]here is a lack of medical evidence to support disability from a psychiatric standpoint insofar as you're seen only on an as needed basis, scored low on anxiety and depression testing, and present in office visits with virtually no psychiatric symptoms." (AR 158). The letter further concluded that "[t]he information pertaining to your physical complaints show that while you indeed do have a complicated medical history, you would still be capable of working on a full-time basis in a sedentary occupation," as long as Plaintiff had appropriate restrictions, was required to only occasionally handle, finger, and feel, was able to change positions on an as needed basis, and would not have to reach above shoulder level. (AR 158).

ERISA requires a plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant

7

. . . ." 29 U.S.C. § 1133.  Contrary to Plaintiff's assertions, Defendant's written notice adequately set forth the specific reasons for the denial and satisfied the statutory notice requirements.

The other issue raised by Plaintiff is whether Defendant ignored evidence in the file that was favorable to a disability finding.  In *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356 (6th Cir. 2002), the Sixth Circuit held that where the plan administrator sent the vocational consultant only one aberrant physical capacities evaluation and not other conflicting information from the file, such cherry-picking of the contents of the file in hopes of obtaining a favorable report from the vocational consultant was arbitrary and capricious. *Id.* at 362.  Plaintiff contends that, like the plan administrator in *Spangler*, Defendant engaged in a cavalier disposition of its fiduciary duties by cherry-picking this file for evidence favorable to its denial of benefits and failing to evaluate the merits of the opposing evidence.

Plaintiff does not suggest that any pertinent medical evidence was withheld from the independent medical reviewers.  The record indicates that Dr. Elizabeth Roaf, M.D, Board Certified in Physiatry, who conducted the medical record review, was well aware of Plaintiff's diagnoses of carpal tunnel syndrom, fusion at C5-6 and C6-7, mastectomy, depression, chronic rotator cuff tear, fractured tail bone, and nerve injury.  It also indicates that she reviewed medical records from Plaintiff's doctors covering the period of 2000 to 2004, including Dr. Kilmer, Dr. Halperin, Dr. Winkler, Dr. Burhans, Dr. Kranz,

8

Dr. Veenstra, Dr. Visser, Dr. Kounpanis, Dr. Carmody, and Dr. Guernsey, and spoke directly with Drs. Kilmer and Visser.

The record indicates that Dr. Melvyn Lurie, Board Certified in Psychiatry, who conducted the psychiatric medical record review, reviewed reports and correspondence from Dr. Stuppy, Dr. Halpern, Dr. Kilmer and Dr. Edwards, and spoke directly with Drs. Kilmer and Edwards. (AR 140-54). Dr. Lurie found no credible evidence for any true psychiatric condition or for any functional limitation or restriction due to any psychiatric condition.

Contrary to Plaintiff's assertions, Defendant did not ignore the disability findings of her own physicians. Dr. Roaf specifically referenced Dr. Burhans' opinion in May 2001 that Plaintiff had been continuously disabled since February 14, 2000, Dr. Veenstra's opinion in February 2001 that Plaintiff could return to work, but was limited to one-arm work only, and the work limitations suggested by Dr. Winkler in 2003, by Dr. Carmody in 2002, and by Drs. Burhans and Messinger in 2000. (AR 119-39).

Contrary to Plaintiff's assertions, her treating doctors did not expressly find that her "many medical conditions rendered her totally disabled." (Pl. Br. at 10). Dr. Carmody was the only one who felt that given Plaintiff's pain and depression, she was not able "at this time to work on a consistent basis or a regular set of hours." (AR 114). None of Plaintiff's other doctors suggested that she was totally disabled. Dr. Veenstra merely opined that Plaintiff would have a permanent restriction of one-arm work only. (AR 109). Moreover, he advised Dr. Roaf that because his last comprehensive assessment was from January 2002, he could not comment on Plaintiff's capacity to return to work from June 2003 going forward.

9

(AR 130).  Dr. Liepman merely noted that Plaintiff has "a substantial amount of disability from her lymphedema, left arm and shoulder pain, and a tender and uncomfortable left breast reconstruction," and that it was hard to imagine that Plaintiff could "comfortably do any kind of lifting, moving, or twisting with that left shoulder."  (AR 111).  Dr. Winkler restricted Plaintiff from reaching overhead, but deferred to her physical therapy team for other limitations.  The physical therapist limited Plaintiff to four hours of sitting and four hours of standing, but noted that Plaintiff did not demonstrate an increase in cardiac response or postural changes to indicate maximum effort during testing.  (AR 000309).  Dr. Kilmer expected that Plaintiff would qualify for a sedentary type of work with an ergonomically appropriate set-up.  (AR 234, 299).  Although Dr. Kilmer had the impression that Plaintiff was disabled from working, such a disability "would be predominantly from a psychiatric profile versus a musculoskeletal problem."  (AR 234).

     Because Dr. Kilmer had reservations about Plaintiff's psychological limitations, she referred Plaintiff to Dr. Edwards, a psychologist.  Dr. Edwards found in August 2003 that Plaintiff did not report significant anxiety or depression and did not feel therapy was necessary.  He nevertheless felt that given Plaintiff's complicated medical history and current emotional state, "it would not be desirable for her to return to work."  (AR 233).  Plaintiff eventually did have four more sessions with Dr. Edwards, at the conclusion of which Dr. Edwards noted that Plaintiff appeared to be doing much better, her mood was more stable on the Lexapro, she was not having any crying spells, and her pain was under much better control on the Methadone.  According to Dr. Edwards, Plaintiff did not need any other

psychiatric intervention and they would continue to meet on an as needed basis. (AR 213). Because Plan benefits are only payable while one is under the regular care of a physician, (AR 66-67), Plaintiff did not meet the requirement for a psychological disability. Moreover, Dr. Edwards advised Dr. Lurie that Plaintiff did not have a psychiatric disability and that psychologically she could handle a part-time job and work into full-time. (AR 147).

In support of her claim of disability Plaintiff has also noted that the Social Security Administration determined that she became disabled on February 14, 2000. The definition of "disability" for purposes of Social Security disability benefits is substantially similar to the terms of the Plan. A disability determination by the Social Security Administration is not binding on an ERISA plan administrator, but it is one factor to be considered in determining whether a plan administrator's decision was arbitrary and capricious. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294-95 (6th Cir. 2005). In this case the relevance of the Social Security disability finding is limited because there is no evidence that the Social Security Administration considered the findings of Dr. Kilmer or Dr. Edwards.

Both Plaintiff's most recent treating physician and her treating psychologist concluded that Plaintiff was capable of sedentary work if certain limitations were accommodated. While their opinions found that Plaintiff was capable of more activities than the opinions of Plaintiff's other treating physicians, they were not inconsistent with the other opinions and they were supported by Defendant's independent medical consultants.

After determining that Plaintiff was not totally disabled from performing "any occupation" Defendant obtained input from its Rehabilitation Clinical Case Manager on the

11

availability of occupations that would accommodate Plaintiff's limitations. The Employability Analysis Report ("EAR") of September 2003 found eleven such occupations that were prevalent in the national economy. (AR 239-40). Plaintiff notes that a previous EAR completed in June 2003 found that Plaintiff did not possess the transferable skills to perform any occupations. (AR 274-75). Plaintiff suspects that the difference between the findings in the two reports must be attributable to Defendant intentionally misinterpreting the "at will" restriction to mean "at the employer's will" rather than at Plaintiff's will. Plaintiff's suspicion is not supported by the record. The June EAR was based upon the capacity to sit four hours a day, stand four hours a day and walk 1 hour a day, while the September EAR was based upon the capacity to sit/stand/walk eight hours a day (at will). Although Plaintiff contends that the "at will" restriction is manifestly greater than an enumerated time restriction, Plaintiff has provided the Court no basis for questioning the expertise or credibility of the individual who prepared the EAR.

Based upon the record in this case, it appears to this Court that Defendant's benefit determination was "rational in light of the plan's provisions," *Univ. Hosps. of Cleveland*, 202 F.3d at 846, and that it was "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn*, 461 F.3d at 666. Accordingly, under the deferential arbitrary and capricious standard, the Court must affirm Defendant's decision to terminate Plaintiff's long term disability benefits.

An order and judgment consistent with this opinion will be entered.

Date:     March 19, 2007            /s/ Robert Holmes Bell
                                                                               ROBERT HOLMES BELL
                                                                               CHIEF UNITED STATES DISTRICT JUDGE